**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:05cv86**

| | | |
|---|---|---|
| JACK V. SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| Vs. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| JOHN M. DUFFEY; JOHN SHAW; and JAY | ) | |
| W. ALLEN, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**THIS MATTER** is before the court on defendants' Motion to Dismiss (#24), plaintiff's Memorandum in Opposition (#26),defendants' Reply (#27), and the response of the Chapter 11 Trustee adopting the pleadings of the plaintiff (#29).See In re Jack V. Smith, 06-10223 (W.D.N.C. April 5, 2006). Having carefully considered defendants' Motion to Dismiss and reviewed the pleadings, the undersigned enters the following findings, conclusions, and recommendation.

## FINDINGS AND CONCLUSIONS

### I.    Background

This action involves stock options received by plaintiff in exchange or partial exchange for plaintiff's controlling interest in another company. Former defendant Dade Behring Holdings is a Delaware corporation with its principal place of business in Illinois. Complaint, at ¶ 2. Defendants John M. Duffey, John Shaw, and Jay W. Allen are alleged to be employees of Dade Behring, and are citizens and residents of Illinois. Id., at ¶¶ 3-5, 34. Plaintiff is a resident of North Carolina, residing in Buncombe County. Id., at ¶ 1.

Plaintiff alleges that in November 1999, he and Dade Behring Inc. entered into a Stock Purchase Agreement (hereinafter "SPA") wherein Dade Behring Inc. agreed to

purchase Smith's controlling stock interest in Chimera Research and Chemical, Inc. <u>Id.</u>, at ¶ 11. As part of the agreement, Smith received options to purchase 20,000 shares of Dade Behring Holdings stock. <u>Id.</u>, at ¶ 12. Simultaneous with executing the SPA, plaintiff alleges that Dade Behring Inc. and Smith's company, Inventeck, Inc., entered into a Research and Development Agreement in which Smith agreed to provide services in the area of laboratory sample adulteration. <u>Id.</u>, at ¶ 13.

Disputes thereafter arose between Dade Behring and Smith, and they began negotiating a "Termination, Release, and Asset Purchase Agreement" (hereinafter the "Termination Agreement"). <u>Id.</u>, at Exhibit 3. The Termination Agreement provided for a cash payment of over $1.4 million to Smith and terminated certain obligations of Smith, Inventeck and Dade Behring. <u>Id.</u>, at ¶¶ 14-18. It appears undisputed that plaintiff was paid the $1,432,021.83, pursuant to the terms of the Termination Agreement. <u>Id.</u>, at ¶ 18.

One of the conditions precedent to the Termination Agreement was the execution and delivery of a Stock Option Letter by Dade Behring to Smith evidencing the stock options he had previously been issued in connection with the 1999 Stock Purchase Agreement. <u>Id.</u>, at ¶ 19. In May 2002, Dade Behring provided Smith with a "Stock Option Letter," <u>Id.</u>, at ¶ 20 & Exhibit 4, which was signed by individual defendant, John Duffey. Affidavit of Duffey.

On August 1, 2002, Dade Behring Holdings and Dade Behring Inc. entered Chapter 11 bankruptcy in the Northern District of Illinois and were reorganized. <u>Id.</u>, at ¶ 21. Plaintiff contends herein that he did not receive notice of the Chapter 11 petition until after the Confirmation Order was entered. <u>Id.</u>, at ¶ 22.

After the debts of Dade Behring had been discharged in bankruptcy, plaintiff filed suit in this court on April 15, 2005 against Dade Behring Holdings and three of Dade Behring Inc.'s employees, those being the defendants, Duffey, Shaw and Allen, alleging causes of

action for breach of contract, fraud, unfair and deceptive trade practices, and "punitive damages." Dade Behring has been dismissed in this court and the issue of sanctions against the plaintiff for filing a complaint against Dade Behring is now pending before the bankruptcy court in Illinois.

In this action, plaintiff has asserted three causes of action against the remaining employee defendants: (1) fraud; (2) unfair and deceptive trade practices; and (3) punitive damages.[1] Defendants have moved to dismiss under Rule 12(b)(2) & (6), arguing that this court lacks personal jurisdiction over them and that, in any event, plaintiff has failed to state cognizable claims against them.

## II.  Applicable Standards

### A.  Rule 12(b)(2)

Rule 12(b)(2) provides for dismissal where the court lacks personal jurisdiction over a particular named defendant. In the Fourth Circuit, the standard for deciding a motion based on Rule 12(b)(2) was set forth in <u>Combs v. Bakker</u>, 886 F.2d 673, 676 (4th Cir.1989), where it explained that a plaintiff has the burden to prove personal jurisdiction by a preponderance of the evidence. When a factual dispute arises as to whether or not jurisdiction exists, the court may either conduct an evidentiary hearing or defer ruling on the matter until it receives evidence on the jurisdictional issue at trial. <u>Id.</u> When a court decides the issue on the record then before it, the court may consider "the motion papers, supporting legal memoranda, affidavits, other documents, and the relevant allegations of the complaint," and

---

[1]    Defendants argue in their brief that the claims "against Dade Behring either have been or should be dismissed with prejudice." Docket Entry 25, at 14. The district court held on March 23, 2006, that "IT IS, THEREFORE, ORDERED that the Plaintiff's motion to dismiss is ALLOWED, and the Plaintiff's claims against the Defendant Dade Behring Holdings, Inc., are hereby DISMISSED WITH PREJUDICE in their entirety." Docket Entry 17.

the burden is plaintiff's "to make a mere *prima facie* showing of jurisdiction to survive the jurisdictional challenge." Clark v. Milam, 830 F.Supp. 316, 319 (S.D.W.Va.1993) (citations omitted). A court must resolve factual disputes in favor of the party asserting jurisdiction for the limited purpose of the *prima facie* showing. Bakker, at 676. Such resolution must include construing all relevant pleadings in a light most favorable to the plaintiff, assume the credibility of any affiant, and drawing the most favorable inferences for the existence of jurisdiction. Id.

**B.    Rule 12(b)(6) Standard**

Where a defendant contends that a plaintiff has failed to state a cognizable claim, Rule 12(b)(6) authorizes dismissal based on a dispositive issue of law. Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827, 1832 (1989); Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Conley v. Gibson, 355 U.S. 41 (1957). As the Court discussed in Neitzke:

> This procedure [for dismissal], operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and fact finding. Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be granted under any set of facts . . . a claim must be dismissed, without regard to whether it is based on outlandish legal theory . . . . What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations."

Id., at 1832 (citation omitted). Dismissal of a complaint is proper under Rule 12(b)(6) where it is clear that no set of facts consistent with the allegations in the plaintiffs' complaint could support the asserted claim for relief. Taubman Realty Group LLP v. Mineta, 320 F. 3d 475, 479 (4th Cir. 2003); Migdal v. Rowe Price-Fleming Intl Inc., 248 F. 3d 321, 325-36 (4th Cir. 2001).

While the court accepts factual allegations in the complaint as true and considers the facts in the light most favorable to a plaintiff in ruling on a motion to dismiss, a court "need

not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

> The presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion. And although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant. This requirement serves to prevent costly discovery on claims with no underlying factual or legal basis.

Migdal, at 326 (citations and internal quotations omitted). In addition, a court cannot "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Venev v. Wyche, 293 F. 3d 726, 730 (4th Cir. 2002) (citations and internal quotations omitted). For the limited purpose of ruling on defendants' motions, the court has accepted as true the facts alleged by plaintiff in the complaint and will view them in a light most favorable to plaintiff.

## III.    Discussion

### A.    Rule 12(b)(2): Motion to Dismiss for Lack of Personal Jurisdiction

The defendants contend that this action should either be dismissed for lack of personal jurisdiction or transferred to the North District of Illinois. The defendants contend that they have never traveled to North Carolina and that they have not had the requisite minimum contacts with this forum that would justify the exercise of personal jurisdiction over them. The plaintiff makes two contentions in regard to jurisdiction, those being:

(1)    That there is jurisdiction in this court because the defendants have now filed a bankruptcy petition in the Western District of North Carolina and as a result, there is jurisdiction, pursuant to 28 U.S. 1334(e); and

(2)    That there were sufficient contacts of the defendants with the state of North Carolina to justify the exercise of personal jurisdiction of the defendants.

## 1.     Law Applicable to Personal Jurisdiction

At the constitutional level, whether or not to exercise jurisdiction over a defendant is a question of fairness.  International Shoe Co. v. Washington, 326 U.S. 310, 317-20 (1945).  In determining what is fair, a court must review of the quantity and quality of the defendant's contacts with the forum state.  Perkins v. Benquet Mining Co., 342 U.S. 4376 (1952).  Constitutional concerns only arise where jurisdiction is allowed pursuant to a state's long-arm statute.  As the Court of Appeals for the Fourth Circuit has stated:

> [W]hen evaluating the propriety of jurisdiction obtained pursuant to a long-arm statute, a two-step analysis is normally required.  First, we must determine whether the statutory language applies to the defendant; second, if the statutory language applies, we must determine whether the statutory assertion of jurisdiction is consistent with the due process clause of the Constitution.

English & Smith v. Metzger, 901 F.2d 36, 38 (4th Cir. 1990) (citation omitted).

In considering defendants' Motion to Dismiss, analysis begins with the two-step approach discussed by the Court of Appeals above.  The North Carolina Supreme Court has held that the state's jurisdictional statute applies to a defendant who meets the minimal contacts requirement of International Shoe Co. v. Washington, supra.  See Dillon v. Numismatic Funding Corp., 291 N.C. 674 (1977); see also  Western Steer-Mom & Pops v. FMT Invs., Inc., 578 F. Supp. 260, 264 (W.D.N.C. 1984) .  The two-pronged approach approved by the circuit in English & Smith, therefore,"collapses into the question of whether (the Defendants have) the minimum contacts with North Carolina." Fieldcrest Mills, Inc. v. Mohasco Corp., 442 F. Supp. 424, 426 (M.D.N.C. 1977).

There are five factors used in determining whether the long-arm statute and minimum contacts have been satisfied:

(1)     quantity of the contacts;
(2)     nature and quality of the contacts;
(3)     source and connection of the cause of action to the contacts;
(4)     interest of the forum state; and

(5)    convenience.

Western Steer-Mom & Pops v. FMT Invs., Inc., supra, at 264; see Fieldcrest Mills, Inc. v. Mohasco Corp., supra, at 427; see also N.C. Gen. Stat. § 1-75.4(5) (North Carolina long-arm statute).

The burden is on the party invoking the court's jurisdiction - - the plaintiff - - to establish that the long-arm statute provides for jurisdiction over these defendants. Marion v. Long, 72 N.C. App. 585, cert. denied, 313 N.C. 604 (1985). The materials and arguments submitted by plaintiff and defendant will be reviewed in light of the five considerations found in Western Steer-Mom & Pops v. FMT Invs., Inc., supra, *seriatim,* by drawing all possible inferences in plaintiff's favor.

### 2.    Personal Jurisdiction Over Corporate Employees

Without their own contacts, an employee of a corporation cannot be hailed into a forum in which his or her employer could otherwise be sued. There is no derivative jurisdiction. Even if the court were to assume that it had personal jurisdiction over the former corporate defendant, such jurisdiction does not attach automatically to the employees of the corporation. Columbia Briargate Co. v. First Nat's Bank, 713 F.2d 1052, 1055 (4th Cir. 1983). There must be an independent basis for asserting personal jurisdiction over each employee. Id.

A non-resident corporate agent of a non-resident corporation cannot be hailed into this forum where any connection he had to the alleged tort occurred outside this forum. The rule in the Fourth Circuit is, as follows:

> when a non-resident corporate agent is sued for a tort committed by him in his corporate capacity in the forum state in which service is made upon him without the forum under the applicable state long-arm statute as authorized by Rule 4(e), he is properly subject to the jurisdiction of the forum court, provided the long-arm statute of the forum state is co-extensive with the full reach of

due process. On the other hand, if the claim against the corporate agent rests on nothing more than that he is an officer or employee of the non-resident corporation and if any connection he had with the commission of the tort occurred without the forum state, we agree that, under sound due process principles, the nexus between the corporate agent and the forum state is too tenuous to support *1065 jurisdiction over the agent personally by reason of service under the long-arm statute of the forum state.

Id., at 1064 -65.

In a decision discussing Columbia Briargate Co., the court in the District of Maryland held, as follows:

An individual who has chosen simply to transact business in a state through a valid and viable corporation has not necessarily "purposefully avail[ed]" himself of "the privilege of conducting activities within ... [that] State" in his individual capacity. *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Nor can it be said that he would "reasonably anticipate being haled into court" in the state in his individual capacity by virtue of the corporation's activities there. *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980); *see also Calder v. Jones,* 465 U.S. 783, 790, 104 S.Ct. 1482, 1487, 79 L.Ed.2d 804 (1984) (employees' contacts with the state "are not to be judged according to their employer's activities there"); *Shaffer v. Heitner,* 433 U.S. 186, 213-16, 97 S.Ct. 2569, 2584-86, 53 L.Ed.2d 683 (1977) (individuals' status as directors and officers of a corporation insufficient to sustain jurisdiction over them in the state of incorporation absent a statute to the contrary). No principle is more firmly embedded in corporation law than that a corporation exists separately and independently from its principals, and business people are entitled to rely upon the maintenance of that principle in structuring and managing their affairs.

Birrane v. Master Collectors, Inc., 738 F.Supp. 167, 169 -70 (D.Md. 1990) (footnote omitted).

### 3.  The Contacts

Inasmuch as the burden is plaintiff's, the undersigned has looked to plaintiff's Complaint, his brief in opposition, and his affidavit and exhibits in determining what acts or contacts these defendants have had with this forum.

Plaintiff has submitted a number of exhibits in support of his argument, but has, through clerical error, duplicated exhibit numbers. The court will identify plaintiff's exhibits in the manner in which plaintiff has labeled them, followed in brackets by the court's re-

designation, with a brief description of each exhibit:

(A) [1]   a copy of plaintiff's bankruptcy filing in this district;

(B) [2]   a copy of bankruptcy Schedule B, in which this action is listed on Schedule B as an asset of the estate;

(C) [3]   bankruptcy form 7, in which this suit is listed as pending litigation involving the estate;

(A) [4]   a second "Exhibit A," which appears to be a letter from Dade Behring addressed to plaintiff in Asheville, North Carolina, which was signed by corporate counsel for Dade Behring, and dated 1999 which sets forth the terms and conditions of a Stock Purchase Agreement;

(B) [5]   a second "Exhibit B," which appears to be a cover letter dated May 3, 2002 from Defendant Allen addressed to plaintiff in Fletcher, North Carolina, concerning the Termination Agreement. In the Agreement, the Defendant Allen states, "I would like to reiterate our previous discussion between you, Foster Shriner, John Shaw and myself that the shares may be valueless";

(C) [6]   a second "Exhibit C," which appears to be a memorandum dated May 3, 2002 from Defendant Duffey to plaintiff confirming his stock options;

(D) [7]   a 2001 letter from a CPA, Foster Shriner, addressed to plaintiff in Arden, North Carolina, concerning his analysis of plaintiff's agreement with Dade Behring; and

(E-1 through E-3) [8,9. & 10]

copies of what purport to be transcripts of telephone conversations between plaintiff and Defendants Allen and Duffey.

See Docket Entry 26. For ease of reference, plaintiff's exhibits will hereinafter be referred to by their re-designations as plaintiff's Exhibit 1 through 10.

### a.   Plaintiff's Bankruptcy Filing

Plaintiff first contends that his own bankruptcy filing - - an event which occurred after he filed this action - - gives this court "exclusive jurisdiction" over these defendants. In support of such argument, plaintiff sites the court to 28, United States Code, Section 1334(e), which provides, as follows:

> The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate.

While such provision certainly grants this court (and in turn the bankruptcy court) jurisdiction over all of <u>plaintiff's</u> property, it does not purport to overrule the Due Process Clause of the Fourteenth Amendment.

Further, the fact of plaintiff's bankruptcy and Exhibits 1 through 3 cannot add to the quantum of defendants' contacts, which are finite and determined at the time the Complaint is filed. In <u>Smith v. Sperling</u>, 354 U.S. 91 (1957), the Supreme Court held that "the jurisdiction of the Court depends upon the state of things at the time of the action brought, and that after vesting, it cannot be ousted by subsequent events." <u>Id.</u>, at 93. To read Section 1334(e) to provide for "exclusive jurisdiction" over the claims asserted in the Complaint would require this court to ignore Section 1332, which allows this court to hear plaintiffs' state-law claims only through exercise of diversity jurisdiction. Clearly, plaintiff's claims do not "arise from" and were not "created" by the Bankruptcy Code, 28 U.S.C. § 1334(a), but are instead garden variety tort claims. Indeed, plaintiff has himself alleged in his Complaint that this court's jurisdiction over this action arises under 28, United States Code, Section 1332. <u>See</u> Complaint, at ¶ 6.

More to the point, plaintiff has argued that his own bankruptcy filing on April 5, 2006, almost one year after he filed this action on April 15, 2005, somehow creates personal jurisdiction over the defendants. Besides being contrary to bankruptcy law, plaintiff's theory is wholly incompatible with the well-settled principle in the Fourth Circuit that "[j]urisdiction cannot be manufactured by the conduct of others." <u>Chung v. NANA Dev. Corp.</u>, 783 F.2d 1124, 1128 (4th Cir.1986).

### b.    Consideration of the five factors

Having eliminated any jurisdictional arguments based on the plaintiff's bankruptcy proceeding, the undersigned has considered the contacts that the defendants have had with this forum and the five factors as set forth in <u>Western Steer-Mom & Pops v FMT Invs., Inc.</u>, 578 F. Supp. 260 (W.D.N.C. 1984).

### (I)    Quality of the Contacts

In the plaintiff's affidavit (#26), the plaintiff describes a quantity of contacts in North Carolina with the corporate former defendant, Dade Behring Holdings, Inc., but has described few specific contacts applicable to the three individual defendants. On page 3 of his affidavit, the plaintiff avers,

> we had dozens of Dade employees, management and other agents of Dade in our facility over the years. Essentially, for all purposes, we were a division of Dade... We communicated dozens of times a day with Dade...by phone, emails, letters, faxes and FedEx.

On page 8 the plaintiff avers,

> with regards specifically to Mr. Allen VP, Mr. John Shaw, John Duffey, CFO and any of the employees of Dade, I have had over 1,000 communications in support of Dade's business activities here in Asheville, North Carolina through myself and Inventeck.

The plaintiff's affidavit does not reference any specific numbers of contacts of any of the individual defendants. The individual defendants aver that none of them have ever visited North Carolina with respect to any business between the plaintiff and Dade Behring. (¶ 5 of the Affidavit of each individual defendant) Defendant Duffey avers that he has never met or spoken to the plaintiff or any representative of the plaintiff. (Duffey Affidavit ¶ 4) The Defendants Shaw and Allen aver they negotiated with the plaintiff to terminate a business relationship between Smith and the employer of Shaw and Allen, that being Dade Behring Holdings, Inc., and that all the negotiations were conducted by telephone while Shaw and

Allen were in Illinois. (Shaw and Allen Affidavits ¶ 7) Shaw and Allen further aver that all negotiations were in their capacity as employees of Dade Behring Holdings, Inc. (Shaw and Allen Affidavits ¶ 17) The quantity of the contacts of the individual defendants with the state of North Carolina must be weighed in their favor, particularly as to the Defendant Duffey.

### (II) Nature and Quality of the Contacts

It would appear that plaintiff is relying on mail and telephone communications (from, to, or with the individual defendants) that the plaintiff had concerning the stock option or termination agreement in 2002. Plaintiff has supported these contacts with exhibits which appear to be copies of correspondence and a memorandum from some of the defendants, which the court assumes were delivered to plaintiff in this forum by the United States Postal Service. Plaintiff's Exhibits 4-6. The other significant exhibits appear to be portions of transcripts of telephone conversations between plaintiff and Defendants Allen and Shaw, and perhaps plaintiff's accountant, which plaintiff appears to have surreptitiously recorded. Such transcripts do not appear to be complete, have not included a verification from a court reporter as to the completeness and accuracy of the transcripts, and there is no correction and errors page attached thereto. There has not been provided to the court any indication about when these calls were recorded and the method and accuracy of the recording.

While plaintiff admits that none of these defendants ever came to North Carolina to transact business, Plaintiff's Response, at 5,[2] he argues that there was a "clear nexus between the individual Defendants and the Plaintiff in the State of North Carolina" that would warrant the exercise of personal jurisdiction. Id. A personal "nexus between the plaintiff and the

---

[2] Plaintiff has, however, argued that other employees of Dade Behring had traveled to North Carolina routinely. While those may be the subject of consideration if Dade Behring's contacts were at issue, they simply are not relevant as to these individual defendants contacts for the same reasons the Court of Appeals for the Fourth Circuit discussed in Chung.

defendants" is not at all what the case law requires; instead the Fourth Circuit requires this court to look at the "nexus between the corporate agent and <u>the forum state</u> . . . ." <u>Columbia Briargate Co.</u>, <u>supra</u>.

Reading all the materials in a light most favorable to plaintiff, he has produced evidence showing that defendants, acting in their capacities as corporate officers or employees, sent plaintiff letters in this forum and either placed or received telephone calls to or from this forum concerning the subject matter of this litigation. The Court of Appeals for the Fourth Circuit has spoken on the import of telephone calls:

> Ordering a product or service by telephone from a company in a different state does not subject the customer to that state's jurisdiction. While it is true that the electronic connection transports the customer's order for the product or service into the forum state, thereby prompting a response, such conduct does not establish the customer's "presence" in that jurisdiction. On the contrary, the use of a telephone to facilitate transactions between remote locations serves as an alternative to presence. To conclude that such activity establishes presence in a state would upset generally held expectations . . . and redefine the nature of state sovereignty.

<u>Stover v. O'Connell Associates, Inc.</u>, 84 F.3d 132, 137 (4th Cir. 1996)(citations omitted). In this case, plaintiff has only referenced a few calls and letters either sent or received by defendants in their capacities as corporate employees. As in <u>Stover</u>, defendants did nothing more than use the mails and the phone to serve "as an alternative to presence," <u>id.</u>, and such activities, without more, should not be sufficient to hail a corporate employee into this forum under prevailing law, especially when the defendants sought to be hailed into a foreign forum where alleged to have been acting in their corporate capacities rather than in their own capacity, and plaintiff knew he was dealing with agents of a corporation.

### (III)   Source and Connection of the Cause of Action  To the Contacts

There has been evidence produced, as referenced above, that shows the source and connection of the cause of action to the contacts was in Illinois and not in North Carolina.

### (IV)    The Interest of Forum State

The State of North Carolina would have little interest in asserting jurisdiction in this matter.  If there was a finding of jurisdiction in the matter, then other business parties would be fearful of conducting any business with a North Carolina resident, even by phone or mail, for to do so could subject that party to jurisdiction in the state based upon nothing other than telephone calls or mail.  Free commerce would be adversely affected by such a finding, and even passive, consequential benefits to North Carolina (such as taxes) could be compromised.

### (V)    Convenience

This factor does not weigh in favor of either the plaintiff or the defendants.

### 4.    Conclusion

Where a plaintiff seeks to assert jurisdiction over a non-resident corporate employee of a nonresident corporation, and all of the employee's alleged activities in connection with the commission of the alleged tort occurred outside the forum state, the "nexus between the corporate agent and the forum state is too tenuous to support personal jurisdiction over the agent under the long-arm statute which is co-extensive with the limits of Due Process. Columbia Briargate Co., supra, at 1064-65.  As the Court of Appeals found in Stover, the use of the mails or telephones does not establish a person's presence in the forum state, inasmuch as use of such means of communication  serve as alternatives to presence in the forum. Stover, supra.

The entirety of the dispute centers on alleged acts of defendants that they either did or did not do in Illinois, promises made and allegedly broken in Illinois, and misrepresentations that either occurred or did not occur in Illinois. In a similar case in which

plaintiff attempted to hail corporate employees located in North Carolina into federal court in Tennessee, the Court of Appeals for the Sixth Circuit held, as follows:

> Nevertheless, Plaintiffs' concession that Defendants Henderson and Englar did not commit their alleged deceptive acts within the geographical confines of Tennessee appears to diminish the state's purported strong interest.
> * * *
> In the present action, Defendants were not parties to the Intera-Burlington Woven license agreement, and consequently, neither defendant could have reasonably expected to be haled into a Tennessee court.

Intera Corp. v. Henderson, 428 F.3d 605, 618 -619 (6th Cir. 2005). Plaintiff has conceded that none the alleged wrongful conduct transpired within the bounds of North Carolina, and the only footprints in this forum are those left by plaintiff, who resides and conducts his business in this area. Indeed, it is beyond dispute that plaintiff knew he was dealing with these defendants in their capacities as employees of a corporate entity and he knew that such corporation was headquartered in Illinois.

Finding that this court lacks personal jurisdiction over the Defendants Duffey, Shaw and Allen, the undersigned will recommend that the district court grant defendants' Motion to Dismiss under Rule 12(b)(2) and dismiss this action without prejudice as to filing in an appropriate jurisdiction.

In light of the discussion of the Rule 12(b)(6) motion that immediately follows, the undersigned does not believe that the proposed transfer of this matter (raised by defendants as an alternative to dismissal) to the Northern District of Illinois would be a good use of judicial resources. If the court were to transfer the matter, at least two of the remaining claims would not be viable as a matter of law. Instead, the undersigned would recommend that this action be dismissed without prejudice, which would allow plaintiff an opportunity to rework his Complaint before refiling it in the Northern District of Illinois. None of the parties have addressed whether any statute of limitations has now run and whether any

savings provision would apply if this action was re-filed in another federal court, factors which may have changed the undersigned's recommendation as to transfer.

**B.      Rule 12(b)(6): Motion to Dismiss for Failure to State a Claim**

The undersigned has addressed personal jurisdiction as a threshold matter.  In the event the district court finds personal jurisdiction over these defendants, the undersigned has also considered defendants' alternative Motion to Dismiss all claims for failure to state a claim under Rule 12(b)(6).   The undersigned, respectfully, enters the following recommendation only in the alternative.

Plaintiff has asserted three claims against these defendants, captioned as plaintiffs second through fourth causes of action, which are for: fraud; unfair and deceptive trade practices; and "punitive damages."

**1.      Second Claim for Relief: Fraud**

In response to defendants' Motion to Dismiss plaintiff's fraud by affirmative misrepresentation claim, plaintiff is now contending that his claim is not only a fraud by misrepresentation claim, but also one for fraud by omission.   Complaint, at ¶ 35; *c.f.* Response, at 7-8.

The essential element of a claim of fraud by misrepresentation are: (1) a false representation or concealment of a material fact, (2) that was reasonably calculated to deceive, (3) which was made with the intent to deceive, (4) that did in fact deceive, and (5) resulted in damage. Jolly v. Acad. Collection Serv., 400 F.Supp.2d 851 (M.D.N.C. 2005). To satisfy the specificity requirements of Rule 9(b), it is plaintiff's obligation to plead the time, place, and contents of the false representations, as well as the identity of the person making the representation and what such person  obtained thereby.

In order to plead fraud by omission, a plaintiff must allege the following:

> (1) the relationship or situation giving rise to the duty to speak, (2) the event or events triggering the duty to speak, and/or the general time period over which the relationship arose and the fraudulent conduct occurred, (3) the general content of the information that was withheld and the reason for its materiality, (4) the identity of those under a duty who failed to make such disclosures, (5) what those defendant(s) gained by withholding information, (6) why plaintiff's reliance on the omission was both reasonable and detrimental, and (7) the damages proximately flowing from such reliance.

Breeden v. Richmond Community College, 171 F.R.D. 189, 195 (M.D.N.C. 1997) (citations omitted).

Whether labeled a "misrepresentation" or an "omission," plaintiff's core allegations of fraud can be found in paragraphs 34 and 35 of his Complaint:

> 34. At all times prior to the execution of the Agreement on may 3, 2002, Defendant Dade Behring by and through . . . Duffey . . . Shaw . . . Allen negotiated such Agreement with the Plaintiff . . . and knew that Defendant Dade Behring was preparing to file a Chapter 11 bankruptcy proceeding and for months prior . . . was preparing the Plan as referenced above.

> 35. The Defendants . . . conspired to defraud the Plaintiff by misrepresenting the financial condition of Defendant Dade Behring, the value of the stock options as an integral and material portion of the consideration being paid to the Plaintiff . . . .

Complaint, at ¶ ¶ 34-35.

As to fraud by misrepresentation, plaintiff has failed to plead what duty each of these defendants had to speak. As to either fraud by misrepresentation or omission, plaintiff has failed to plead the materiality of the information he contends should have been conveyed or was misrepresented to him, the gain of each of these individual defendants, deception, and the damages proximately caused by his reliance. Plaintiff's duty is to plead fraud of either variety with specificity, Fed.R.Civ.P. 9(b), which he simply has not done. Defendants are, therefore, entitled to dismissal under Rule 12(b)(6).

In an abundance of caution, the undersigned has considered whether amendment of the Complaint could cure the Rules 12(b)(6) and 9(b) deficiencies. While plaintiff has not

sought leave to amend his Complaint to comply with Rule 9(b), the undersigned has considered whether amendment, if sought, would be "futile."

> Rule 15(a) of the Federal Rules of Civil Procedure provides that when a party seeks leave to amend a complaint "leave shall be freely given when justice so requires." <u>Foman v. Davis</u>, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962), mandates a liberal reading of the rule's direction for "free" allowance: motions to amend are to be granted in the absence of a "declared reason" "such as undue delay, bad faith or dilatory motive . . . , repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . , futility of amendment, etc." In <u>Davis v. Piper Aircraft Corp.</u>, 615 F.2d 606, 613 (4th Cir. 1980), we noted that under Foman a lack of prejudice would alone ordinarily warrant granting leave to amend and that mere delay absent any resulting prejudice or evidence of dilatoriness was not sufficient justification for denial.

<u>Ward Electronics Service, Inc. v. First Commercial Bank</u>, 819 F.2d 496, 497 (4th Cir. 1987). When the possibility of amendment is considered alongside the exhibits now in the record, it would appear that plaintiff could not now, in good faith, Fed.R.Civ.P. 11, amend his pleading to allege fraud. Plaintiff's exhibits include transcripts of phone conversations he purportedly recorded with Defendants Allen and Shaw. Plaintiff apparently submitted these transcripts to counter the instant Rule 12(b)(6) motion. <u>See</u> Response, at 7. When read carefully, the purported transcripts of the phone conversations appear to defeat plaintiff's ability to assert that he was misled by these defendants. If plaintiff's transcription of the phone conversations are accurate (and plaintiff is the proponent of the transcripts), they reveal that plaintiff <u>was</u> informed by Defendants Shaw an Allen that his options were worthless. Plaintiff was told by Defendant Smith that he did not think "the options have any value," Transcript ("Tr."), at 24:3-5, Defendant Shaw revealed to plaintiff that Dade Behring "defaulted on its public debt," Tr., at 51:15-16, is a "very financially distressed company," Tr., at 51:19-20, and that its "secured creditors . . . are all negotiating about the future of the company." Tr., at 53:5-8. While not telling plaintiff explicitly that Dade Behring was planning for bankruptcy, it would appear that those statements, to the effect stock options

would be worthless, would foreclose claims that plaintiff was mislead as to the financial strength of the company. In addition, the evidence now in the record provides that Defendant Allen wrote a letter to Smith confirming and reiterating their conversations that the stock options "may be valueless." See Allen Decl. ¶11 and Exhibit 1 thereto. The undersigned makes these observations solely for the purpose of considering whether leave under Rule 15(a) could be granted.

Putting aside the Rule 15 aspects, plaintiff has simply failed to plead any facts regarding the "who, what, when and where" required for pleading fraud of either sort under the rules of pleading and North Carolina law. Jolly, supra, at 851. Plaintiff has failed to allege who said what about Dade Behring's financial condition, failed to allege when the statements were made, failed to allege how the person making the statement benefitted from the alleged misrepresentation, and what duty each person had to him. Further, plaintiff has failed to make any allegations regarding Duffey's, Shaw's, or Allen's intent to deceive him, and he failed to allege facts regarding how he was deceived. Neither fraud nor allegations of fraud are taken lightly in North Carolina, and plaintiff is obliged to provide the specific factual allegations supporting each of the elements of fraud.

The undersigned will, therefore, respectfully recommend that defendants' Motion to Dismiss plaintiff's Second Cause of Action be allowed, and that such claim be dismissed.

## 2. Third Claim for Relief: Unfair and Deceptive Trade Practices

In Count Three, plaintiff attempts to assert a claim for unfair and deceptive trade practices in accordance with North Carolina law. A claim for Unfair and Deceptive Trade Practices is governed by Chapter 75-1.1(a) of the North Carolina General Statutes, which provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." Id. When such

provision was enacted into law in 1969, it contained the following statement of purpose:

> The purpose of this section is to declare, and to provide civil legal means to maintain, ethical standards of dealings between persons engaged in business and between persons engaged in business and the consuming public within this State to the end that good faith and fair dealings between buyers and sellers at all levels of commerce be had in this State.

N.C. Gen. Stat. 75-1.1(b). See also Edmisten v. Penney Co., 292 N.C. 311 (1977).

In response to a decision of the North Carolina Supreme Court in Edmisten, Section 75-1.1(b) was amended in 1977 to read "[f]or the purposes of this section "commerce" includes all business activities, however denominated . . . ." Id.

The UDTPA is, without doubt, a scheme regulating conduct between buyers and sellers and between businesses. See Roberson v. Dale, 464 F.Supp. 680 (M.D.N.C. 1979). See also Liggett Group, Inc. v. Sunas, 113 N.C. App. 19, 31 (1993); Buie v. Daniel Int'l, 56 N.C. App. 445, 448, cert. denied, 305 N.C. 759 (1982). To state a cause of action under the UDTPA, plaintiffs must allege the following:

(1)     conduct constituting an "unfair or deceptive act or practice;"

(2)     conduct "in or affecting commerce," and

(3)     that such conduct proximately caused actual injury to plaintiff.

Food Lion, Inc. v. Capital Cities/ABC Inc., 951 F. Supp. 1224, 1230 (M.D.N.C. 1996). The court will review the Complaint as to each element to determine whether a claim has in fact been stated.

Plaintiff has alleged that "acts, omissions and misrepresentations of the Defendants . . . constitute a violation of the [UDPTA]." Complaint, at ¶ 42. In the factual allegations of the Complaint, plaintiff has alleged that defendants negotiated such [Termination Agreement with the Plaintiff . . . and knew that Defendant Dade Behring was preparing to file a Chapter 11 . . . ." Complaint, at ¶ 34. Further, plaintiff alleges that defendants "conspired to defraud

the Plaintiff by misrepresenting the financial condition of Dade Behring . . . ." Id., at ¶ 35.

Reading the Complaint in a light most favorable to plaintiff, it would appear that plaintiff is contending that defendants' alleged failure to disclose in negotiating the Termination Agreement that Dade Behring was contemplating bankruptcy is an "unfair and deceptive trade practice." [3]

Clearly, plaintiff's UDTPA claim is based on an alleged breach of the Termination Agreement, otherwise known as a contract. Generally, even an allegation of an *intentional* breach of contract will not support an action for unfair and deceptive trade practices under the North Carolina statute. United Roasters, Inc. v. Colgate-Palmolive Co., 485 F. Supp. 1049, 1060 (E.D.N.C. 1980), aff'd, 649 F.2d 985 (4th Cir.), cert. denied, 454 U.S. 1054 (1981); Pappas v. NCNB Nat'l Bank, 653 F. Supp. 699 (M.D.N.C. 1987). A UDTPA claim based on a breach of contract will only survive a Rule 12(b)(6) motion if a plaintiff alleges:

> substantial aggravating circumstances attending the breach.... [T]o find such factors one would probably need to demonstrate deception either in the formation of the contract or in the circumstances of its breach.

Bartolomeo v. S. B. Thomas, Inc., 889 F.2d 530, 535 (4th Cir. 1989)(citations omitted). In North Carolina, it appears that a UDTPA claim is not dependent on *actual* deception, because "it is not necessary to show that plaintiff was actually deceived but only that the tendency or capacity to mislead exists." Lapierre v. Samco Development Corp., 103 N.C.App. 551, 557-58 (1991). Thus, a plaintiff could fail to allege actual fraud (as plaintiff has done here), but be able to allege deception sufficient to satisfy Rule 12(b)(6) review.

To satisfy the first element, plaintiff must have alleged "substantial aggravating

---

[3]     In his response, plaintiff argues that if his allegations supporting his claim of fraud are sufficient, then such allegations suffice to allege a claim for unfair and deceptive trade practices. Response, at 6. Plaintiff has made no argument in contemplation of a finding that he has not stated a claim of fraud.

circumstances" amounting to deception in formation of the contract or in its breach. North Carolina case law provides that promises to remedy damages without the intent to follow through is, in itself, an aggravating or egregious circumstance. Unifour Constr. Serv., Inc. v. BellSouth Telecommunications Inc., 163 N.C.App. 657, 666-67, disc. rev. denied, 358 N.C. 550 (2004). To the extent the "Termination Agreement" is a settlement agreement, then it would appear that Unifour would apply, inasmuch as plaintiff is essentially asserting that defendants negotiated a settlement agreement knowing full well that at least a portion of the consideration could never be paid.[4]

The undersigned finds that plaintiff has, therefore, adequately pleaded facts that if proved could support finding "substantial aggravating circumstances" in the formation of the Termination Agreement. Plaintiff has satisfied the first element.

As to the second element, it appears that plaintiff has made sufficient allegations that the transaction was "in or affecting trade or commerce." See Complaint , at ¶ 43.

The third and final element of a UDTPA claim is proximate cause of an actual injury. It appears that plaintiff has sufficiently alleged that he has suffered injury as a proximate cause of defendants' alleged unfair and deceptive trade practice. Id., at 44. Unlike the claim of fraud, which brings into play Rule 9(b), there is no heightened pleading requirement for a UDPTA claim based on deception, making plaintiff's allegations sufficient at this stage of the litigation. The undersigned will recommend that defendants' Motion to Dismiss the UDTPA claim be denied.

### 3.    Fourth Claim for Relief: Punitive Damages

Defendants have also moved to dismiss plaintiff's "cause of action" for punitive

---

[4]    The court again notes plaintiff's transcripts which reveal he was informed that the stock options probably had no value.

damages. As a matter of state law, "punitive damages" is not a cause of action, but is instead

a remedy available in very limited circumstances.

> As a general rule, "[p]unitive damages do not and cannot exist as an independent cause of action, but are mere incidents of the cause of action and can never constitute a basis for it. If the injured party has no cause of action independent of a supposed right to recover punitive damages, then he has no cause of action at all." J. Stein, Damages and Recovery § 195 at 389 (1972). North Carolina follows this general rule of law.

<u>Hawkins v. Hawkins</u>, 101 N.C.App. 529, 532 (1991). In North Carolina,

> punitive damages may be awarded only if a claimant proves that the defendant is liable for compensatory damages and that the defendant is guilty of fraud, malice, or willful or wonton conduct.

<u>Combs & Associates, Inc. v. Kennedy</u>, 147 N.C.App. 362, 374 (2001) (citation omitted).

Further, it appears that

> Punitive damages may be awarded against a person only if that person participated in the conduct constituting the aggravating factor giving rise to the punitive damages, or if, in the case of a corporation, the officers, directors, and managers of the corporation participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages.

<u>Phillips v. Restaurant Management of Carolina, L.P.</u>, 146 N.C.App. 203, 215- 16 (2001)

(citation omitted). In North Carolina, the aggravating factors that will justify imposition of

punitive damages are set forth by statute: "(1) fraud, (2) malice, or (3) willful or wanton

conduct." N.C. Gen.Stat. § 1D-15(a). Finding that plaintiff cannot assert punitive damages

as an independent cause of action, the undersigned will recommend that such claim be

dismissed as not stating a cause of action and that any request for punitive damages be

required to be asserted in the *ad damnum* clause of the Complaint.

# RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that

(1)     defendants' Motion to Dismiss (#24) under Rule 12(b)(2) be **GRANTED**, and that this action be dismissed **WITHOUT PREJUDICE** as to refiling in a proper forum;

(2)     that this matter not be *transferred* to the Northern District of Illinois inasmuch as two of the three remaining claims fail to state causes of action as a matter of law, which will allow plaintiff an opportunity to better formulate his Complaint before refiling;

(3)     in the alternative that the defendants' Motion to Dismiss (#24) under Rule 12(b)(6) be

    (A)     **ALLOWED** as to the second and fourth causes of action; and

    (B)     **DENIED** as to the third cause of action.


The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal.  Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

Signed: September 11, 2006

Dennis L. Howell
United States Magistrate Judge